## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

PRIME INSURANCE COMPANY,     )
                                  )
      Plaintiff,             )
                                  )
v.                              )     Case No. CIV-22-626-D
                                  )
BERKSHIRE HATHAWAY HOMESTATE     )
INSURANCE COMPANY,           )
                                  )
      Defendant.         )

## <u>ORDER</u>

Before the Court is Plaintiff Prime Insurance Company's Motion for Summary Judgment [Doc. No. 29], to which Defendant Berkshire Hathaway Homestate Insurance Company (BHHIC) filed a response [Doc. No. 35]. Also before the Court is BHHIC's Motion for Partial Summary Judgment [Doc. No. 30]. Prime filed a response [Doc. No. 34], and BHHIC filed a reply in support [Doc. No. 38]. The matters are fully briefed and at issue.

## BACKGROUND

### i.    Underlying Litigation

This dispute arises from a coverage issue related to underlying litigation in Tulsa County District Court, Case No. CJ-2019-4538, *Shipman v. Howard, et al.* The plaintiff in the underlying suit, Nathaniel Shipman, alleges he was injured in a vehicular accident when his car collided with a semi-truck driven by Wendell Howard. Shipman alleges that Howard was driving in the course and scope of his employment with Swaggin Wagon, Inc.

1

(Swaggin Wagon) *and/or* Myriad Transport & Environmental, Inc. (Myriad).[1] Both Swaggin Wagon and Myriad are commercial transportation companies.

In the underlying litigation, Shipman brought claims against Howard, Swaggin Wagon, Prime, and Myriad. For his claims against Swaggin Wagon and Myriad, Shipman alleges that the entities are vicariously liable and were negligent in training and/or supervising Howard. Shipman also brought a claim against Prime as Swaggin Wagon's insurer [Doc. No. 29-3]. In the underlying litigation, dispositive motions are to be filed by February 9, 2024, and the pretrial conference is currently scheduled for March 19, 2024.[2]

**ii.   Lease Agreement**

On August 7, 2017, Swaggin Wagon and Myriad entered into an Independent Contractor Lease Agreement, which contains the following indemnity provision, in relevant part:

> Indemnity. [Myriad] shall defend, indemnify, and hold harmless [Swaggin Wagon] and its agents, employees, and representatives, from any and all damages, losses or claims, including but not limited to attorney fees and costs incurred, arising out of the performance or nonperformance of this Agreement by [Myriad]. [Myriad] shall further defend, indemnify, and hold harmless [Swaggin Wagon] and its agents, employees, and representatives, from any and all damages, losses or claims, including but not limited to attorney fees incurred, relating to any property damage, bodily injury, and/or any other harm or damage sustained by [Myriad] or [Myriad's] personnel arising from the performance or nonperformance of this Agreement, or caused by any acts or omissions of [Myriad]

---

[1] [Doc. No. 29-3]. The Court takes judicial notice of the proceedings publicly accessible through http://www.oscn.net with regard to the underlying litigation.

[2] *See* OSCN, Case No. CJ-2019-4538, Tulsa County District Court, Order filed Nov. 3, 2023, https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CJ-2019-4538&cmid=3310946 (accessed Feb. 1, 2024).

> or [Myriad's] personnel. Additionally, [Myriad] shall defend, indemnify, and hold harmless [Swaggin Wagon] and its agents, employees, and representatives, from any claims made against [Swaggin Wagon], or from any loss or damage incurred by [Swaggin Wagon], including but not limited to, attorney fees and costs incurred, as a result of the operation, maintenance or use of the Equipment, which is not directly authorized and directly related to the performance of this Agreement. [Myriad's] obligations to defend, indemnify, and hold harmless [Swaggin Wagon] are intended to be as broad as the law allows.

[Doc. No. 29-7, at 2]. The Lease Agreement contains a choice of law provision which calls for the Lease Agreement to be interpreted according to Oklahoma law. *Id.* at 8.

### iii.    Prime Policy and BHHIC Policy

At the time of the accident, Swaggin Wagon was the named insured under a Commercial Business Auto insurance policy, policy no. SC1707938, issued by Prime (Prime policy). The semi-truck operated by Howard was a scheduled vehicle under the Prime policy. To date, Prime has provided a defense in the underlying litigation to Swaggin Wagon and Howard based on the terms of the Prime policy.

For the relevant time period, Myriad was the named insured under a Commercial Auto/Virginia Truckers insurance policy, policy no. 02 TRM 018287 – 02, issued by BHHIC (BHHIC policy). The semi-truck was also a scheduled vehicle under the BHHIC policy. Pursuant to the terms of the BHHIC policy, BHHIC has provided a defense to Myriad, and more recently to Howard, in the underlying litigation.

The Truckers Coverage Form of the BHHIC policy provides in part:

> **Section II – Liability Coverage**
>
> **A. Coverage**
>
> We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance, or use of a covered 'auto'.
>
> We have the right and duty to defend any 'suit' for such damages, even if the 'suit' is groundless, false or fraudulent. However, we have no duty to defend 'suits' for 'bodily injury' or 'property damage' to which this insurance does not apply.
> …

[Doc. No. 30-4, at BHHIC00088]. This coverage is limited by exclusions in the BHHIC policy, to include the following:

> **B.   Exclusions**
>
> This insurance does not apply to any of the following:
> …
> **2.   Contractual**
>
> Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:
>
> a.   Assumed in a contract or agreement that is an 'insured contract' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement….

[Doc. No. 30-4, at BHHIC00070].

**iv.   Present Litigation**

On July 26, 2022, Prime filed its Complaint in the present action, seeking declaratory judgments that 1) BHHIC owes a duty to defend and indemnify Swaggin Wagon and Howard in the underlying litigation; 2) BHHIC is the primary insurer of Swaggin Wagon and Howard or, alternatively, that BHHIC should defend and provide

coverage to Swaggin Wagon and Howard on a pro rata basis with Prime; and 3) Prime is entitled to subrogation, contribution and/or reimbursement, equitable or otherwise, from BHHIC for all costs, expenses, payments, or potential liability or indemnification resulting from the underlying litigation on a primary or pro rata basis [Doc. No. 1, at 8].

Both parties moved for summary judgment on whether BHHIC is obligated to defend and indemnify Swaggin Wagon, and indemnify Howard, in the underlying suit.[3] Prime argues that: 1) the semi-truck is a "covered auto" under the BHHIC policy; 2) the Lease Agreement is an "insured contract" as defined by the BHHIC policy; 3) the Lease Agreement contains an indemnity provision, requiring that Myriad defend and indemnify Swaggin Wagon; and 4) alternatively, BHHIC should provide coverage on a pro rata basis with Prime based on the BHHIC policy's "other insurance" provision.

BHHIC contends that it does not owe any affirmative obligation to defend or indemnify Swaggin Wagon because the "insured contract" provision only confirms that BHHIC may owe a duty to indemnify its "insured," Myriad, and not Swaggin Wagon as a potential third party indemnitee under the Lease Agreement. BHHIC further asserts that Prime's claims for reimbursement of costs incurred defending Swaggin Wagon, or a finding of coverage on a pro rata basis, necessarily fail since BHHIC owes no underlying duties to Swaggin Wagon. Alternatively, BHHIC contends that the issue of whether BHHIC is obligated to indemnify either Swaggin Wagon or Howard is premature.

---

[3] The parties have resolved the issue of whether BHHIC has a duty to defend Howard.

**STANDARD OF DECISION**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* FED. R. CIV. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

"Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916

F.3d 1323, 1326 (10th Cir. 2019). When the parties file cross-motions for summary judgment, the Court is entitled to assume "'no evidence needs to be considered other than that filed by the parties.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).

## DISCUSSION

### I.      Choice of Law

As an initial matter, the Court must determine what law applies to Prime's claims. A federal court sitting in diversity applies the substantive law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941). Under Oklahoma law, "[t]he validity, interpretation, application and effect of the provisions of a motor vehicle insurance contract should be determined in accordance with the laws of the state in which the contract was made, unless those provisions are contrary to the public policy of Oklahoma, or unless the facts demonstrate that another jurisdiction has the most significant relationship with the subject matter and the parties." *Bohannan v. Allstate Ins. Co.*, 1991 OK 64, ¶ 30, 820 P.2d 787, 797.

For Prime's claims that require the Court to interpret the BHHIC policy, BHHIC argues that Virginia law should apply because the BHHIC policy was issued in Virginia. Prime concedes that Virginia law should apply to the interpretation of the BHHIC policy [Doc. No. 34, at 6], but argues that the Lease Agreement should be interpreted in accordance with Oklahoma law. In turn, BHHIC concedes that Oklahoma law applies to the interpretation of the Lease Agreement [Doc. No. 35, at 17]. Accordingly, the Court will

apply Virginia law when interpreting the BHHIC policy and Oklahoma law when interpreting the Lease Agreement.

Under both Oklahoma and Virginia law, the insured has the burden of showing that a covered loss occurred, while the insurer has the burden of establishing an exclusion precludes coverage. *Pitman v. Blue Cross and Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000) ("A basic rule of insurance law provides that the insured has the burden of showing that a covered loss has occurred, while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy."); *see also Nationwide Mutual Ins. Co. v. Overlook, LLC*, 785 F.Supp.2d 502, 515 (E.D. Va. May 13, 2011).

## II.     BHHIC's Duty to Defend and/or Indemnify Swaggin Wagon

Prime seeks summary judgment on BHHIC's duty to defend and indemnify Swaggin Wagon. Prime bases its assertion of coverage on its arguments that the truck is identified as a "covered auto" in the BHHIC policy; and the Lease Agreement is an "insured contract" as defined by the BHHIC policy. BHHIC contends that, even assuming the truck is a "covered auto" and the Lease Agreement is an "insured contract," the BHHIC policy at most provides coverage only for its "insured," Myriad.

### A. Covered Auto Provision (BHHIC Policy)

Prime contends that BHHIC should provide coverage to Swaggin Wagon on a primary basis because the truck is listed as a "covered auto" in the BHHIC policy. Missing from Prime's summary judgment briefing, however, is any assertion that Swaggin Wagon is an "insured" under the BHHIC policy. Under the BHHIC policy, BHHIC "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property

damage' to which this insurance applies...." [Doc. No. 30-4, at BHHIC00088]. Prime repeatedly asserts that it must only show the truck to be a "covered auto" for BHHIC to provide primary coverage to Swaggin Wagon. [Doc. No. 29, at 11-12] ("Because the truck is a scheduled auto, and because the BHHIC policy covers scheduled autos, the policy has been triggered and BHHIC is required to provide for indemnity and defense on a primary basis in the underlying litigation...."). Such an argument ignores the plain terms of the BHHIC policy, pursuant to which BHHIC is obligated to its "insured." Without arguing that Swaggin Wagon is an "insured" or "additional insured" under the BHHIC policy, Prime has failed to establish that BHHIC has a duty to defend or indemnify Swaggin Wagon based on the truck being a "covered auto."

**B.  Insured Contract Provision (BHHIC Policy)**

Prime also asserts that BHHIC owes a duty to defend and indemnify Swaggin Wagon because the Lease Agreement, entered into between Myriad and Swaggin Wagon, is an "insured contract" under the BHHIC policy. The "insured contract" provision is found in the BHHIC policy's exclusions for contractual liability:

> **B.    Exclusions**
>
> This insurance does not apply to any of the following:
> …
> **2.    Contractual**
>
> Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:
>
> a.    Assumed in a contract or agreement that is an 'insured contract' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement….

[Doc. No. 30-4, at BHHIC00070]. "Insured contract" is defined as "[t]hat part of any other contract or agreement pertaining to your[4] business … under which you assume the tort liability of another to pay for 'bodily injury' or 'property damage' to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." *Id.* at BHHIC00079. "Insured contract" is further defined as "[t]hat part of any contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your 'employees,' of any 'auto.'" *Id.*

Prime contends that, because the Lease Agreement is an "insured contract," and the Lease Agreement provides that Myriad will defend and indemnify Swaggin Wagon for certain losses, BHHIC has an affirmative duty to defend and indemnify Swaggin Wagon in the underlying litigation. In response, BHHIC seeks summary judgment on its argument that the BHHIC policy is neither primary to, nor concurrent with, Prime's coverage. As with the "covered auto" language, BHHIC asserts that the "insured contract" provision creates, at most, a duty in BHHIC to indemnify *its insured*, Myriad, for damages assumed in the Lease Agreement. For support, BHHIC cites to *Mulvey Constr., Inc. v. Bituminous Cas. Corp.*, Civ. No. 1:07-0634, 2013 WL 1385405 (S.D. W. Va. Apr. 3, 2013) (unpublished), *aff'd in pertinent part*, 571 F. App'x 150 (4th Cir. 2014).

In *Mulvey*, the court applied Virginia law to the question of whether a policy's "insured contract" language created an affirmative obligation for the insurer to defend and indemnify a third party indemnitee. *Mulvey Constr., Inc.*, 2013 WL 1385405, at *4. In that

---

[4] As used throughout the BHHIC policy, "you" and "your" refer to the named insured, Myriad [Doc. No. 30-4, at BHHIC00067].

case, McDonald's had hired Mulvey to construct a McDonald's restaurant, and Mulvey entered into a subcontract with DCI/Shires to build a retaining wall for the project. *Id.* at *1. Pursuant to the terms of the subcontract, DCI/Shires agreed to place Mulvey and McDonald's on its insurance policy issued by Bituminous. *Id.* Although Mulvey and McDonald's received certificates of insurance reflecting that they had been named as additional insureds, for some reason Mulvey and McDonald's were never actually added to the policy as additional insureds. *Id.* Thereafter, a wrongful death action was brought against McDonald's, Mulvey, and DCI/Shires, alleging that the retaining wall fell on and killed a city employee while he was repairing a sewage line break at the property. *Id.* Because neither McDonald's nor Mulvey had been named as additional insureds on the Bituminous policy, Bituminous refused to defend or indemnify either entity in the underlying litigation. *Id.*

After settlement of the underlying litigation, Mulvey and its insurer (One Beacon) sought declaratory judgments, in part, that Mulvey's subcontract with DCI/Shires was an "insured contract" under the Bituminous policy; and that Bituminous owed Mulvey a duty to defend and indemnify it in the underlying litigation. *Id.* at *2. The Bituminous policy provided coverage for damages assumed in an "insured contract," which was defined as "[t]hat part of any other contract or agreement pertaining to your business … under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." *Id.* at *6.

Notwithstanding the breadth of the indemnification provision of the subcontract, the court found:

> The 'insured contract' provision in the Bituminous Policy
> merely provides coverage to its insured; it does not extend
> coverage to third parties.… Even assuming that the subcontract
> between Mulvey and DCI is an insured contract within the
> definition of the Bituminous Policy, it does not make Mulvey
> an additional insured under that policy. Rather, it only obligates
> Bituminous to provide coverage to DCI for any damages DCI
> incurs as a result of the subcontract. For example, if Mulvey
> had … received an award of damages against DCI, Bituminous
> would be liable to DCI for those damages.

*Id.* at *7. The *Mulvey* court contrasted the Bituminous policy with one that explicitly "makes a party to an insured contract an insured under that policy." *Id.* Ultimately, the court held that because Mulvey was not an additional insured under the policy, it was not entitled to coverage. *Id.* (collecting cases holding a party to an "insured contract" is not entitled to a defense and/or coverage from an insurer without being a named or additional insured in the subject policy).

In this case, the BHHIC policy contains substantially identical language as that analyzed by the *Mulvey* court. In its response, Prime offers no authority to counter BHHIC's assertion that the "insured contract" provision does not create an affirmative duty in BHHIC to defend or indemnify Swaggin Wagon as a mere party to the Lease Agreement. Rather, Prime switches its focus to *Myriad* being the "end recipient of any loss incurred by Swaggin Wagon or Mr. Howard." [Doc. No. 34, at 8]. Like in *Mulvey*, Prime's argument fails because the BHHIC policy obligates BHHIC to provide coverage for its insured, Myriad, and not for any entities with whom Myriad may enter into an "insured contract."

For purposes of BHHIC's motion for summary judgment, for which BHHIC argues it does not owe any affirmative duties to Swaggin Wagon based on the "insured contract"

provision of the BHHIC policy, the Court views all reasonable inferences in favor of Prime. Even doing so, Prime has failed to meet its burden to show that Swaggin Wagon is an "insured" under the BHHIC policy, and thus has failed to establish that BHHIC is obligated to defend or indemnify Swaggin Wagon in the underlying litigation. Assuming without deciding that the Lease Agreement is an "insured contract" under the BHHIC policy,[5] the policy makes clear that BHHIC's duties are owed to *Myriad* for damages assumed in an insured contract. [Doc. No. 30-4, at BHHIC00088].

For these reasons, BHHIC is entitled to summary judgment that it is not obligated to defend or indemnify Swaggin Wagon in the underlying litigation based on the "covered auto" or "insured contract" provisions in the BHHIC policy. Prime's cross-motion for summary judgment will be denied on the same grounds.

### III.   Pro Rata Coverage and/or Reimbursement Based on "Other Insurance" Provision

Alternatively, Prime seeks summary judgment on its argument that the BHHIC policy, which contains an "other insurance" provision, has been "triggered" and should provide coverage on a pro rata basis with Prime's policy. The "other insurance" provision in the BHHIC policy provides that "this Coverage Form's Liability Coverage is primary for any liability assumed under an 'insured contract'." [Doc. No. 30-4, at BHHIC00077].

---

[5] The Court declines to decide whether the Lease Agreement is an "insured contract" under the BHHIC policy because such a finding would not render *Swaggin Wagon* an "insured" under the BHHIC policy. For this reason, the Court denies both parties' motions for summary judgment on whether the Lease Agreement implicates the "insured contract" provision of the BHHIC policy.

In its cross-motion, BHHIC argues that because Swaggin Wagon is not entitled to any coverage under the BHHIC policy, Prime's remaining Swaggin Wagon-related claims regarding priority of coverage and reimbursement from BHHIC necessarily fail. The Court agrees. Prime's reliance on the BHHIC policy's "other insurance" provision is misplaced. "Other insurance" provisions merely define an insurer's responsibility for payment when other insurance coverage is available for the same risk and same insured. *See Med. Protective Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 25 F. App'x 145, 146 n.1 (4th Cir. 2002) (unpublished) (applying Virginia law, "[a]n 'other insurance' clause applies when two or more insurance policies cover the same risk for the benefit of the same person."). Here, because Swaggin Wagon is not entitled to coverage under the BHHIC policy, its "other insurance" provision does not render BHHIC obligated to provide pro rata coverage, or to reimburse Prime, for Swaggin Wagon-related expenses. In its response, Prime does not attempt to argue that the BHHIC policy and Prime policy covered the same risk for the same insured, nor does Prime cite to any authority for its contention that the BHHIC policy's "other insurance" provision mandates concurrent coverage where Prime's insured, Swaggin Wagon, is not an "insured" under the BHHIC policy.

Even viewing all reasonable inferences in favor of Prime, Prime has failed to establish its entitlement to reimbursement or concurrent coverage with respect to Swaggin Wagon based on the BHHIC policy's "other insurance" provision. Accordingly, Prime's motion for summary judgment will be denied on this issue, and BHHIC's motion for summary judgment will be granted.

## IV.   BHHIC's Duty to Indemnify Howard

Prime seeks a ruling that, under the BHHIC Policy, BHHIC has a duty to indemnify Howard in the underlying suit. "The duty to indemnify 'refers to an insurer's responsibility to pay a monetary award when its insured has become liable for the covered claim.'" *Nautilus Ins. Co. v. Strongwell Corp.*, 968 F.Supp.2d 807, 820 (W.D. Va. June 5, 2013) (citation omitted) (applying Virginia law). Generally, "it would be 'premature' to rule on [a party's] duty to indemnify while the underlying action remains pending." *Nautilus Ins. Co.*, 968 F.Supp.2d at 821. This is because the duty to indemnify, unlike the duty to defend, relies on "litigated facts" as opposed to mere allegations of the underlying complaint. *Id.*; *see also Builders Mut. Ins. Co. v. Futura Group, L.L.C.*, 779 F.Supp.2d 529, 534-35 (E.D. Va. Apr. 21, 2011) ("[W]hen there is an underlying state court suit, the legal analysis necessary for determination of the duty to indemnify must ordinarily await the ultimate factual findings in the state court suit.").

Based on the foregoing, BHHIC contends that it would be premature to rule on whether it owes a duty to indemnify Howard in the underlying suit. Especially considering the parties have yet to file dispositive motions in the underlying litigation, the Court agrees. In response, Prime does not provide the Court with any convincing reasons to depart from this general rule. Rather, Prime asks that the Court make several other declaratory rulings, most of which were not included in Prime's complaint or motion for summary judgment. For instance, the Court is not inclined to issue an order finding that "*Myriad* is contractually liable for the defense and indemnity of Swaggin Wagon" when 1) Myriad is not a party to this action; and 2) Prime did not seek such a ruling in its complaint or dispositive motion.

15

For these reasons, the Court declines to rule on whether BHHIC owes a duty to indemnify Howard at this juncture, and Prime's Motion for Summary Judgment [Doc. No. 29] is denied as to this point.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Prime's Motion for Summary Judgment [Doc. No. 29] is **DENIED**, and BHHIC's Motion for Partial Summary Judgment [Doc. No. 30] is **GRANTED in part** and **DENIED in part**, as set forth herein.

**IT IS SO ORDERED** this 7th day of February, 2024.

_____

TIMOTHY D. DeGIUSTI
Chief United States District Judge